John L. BONER, Appellant,

v.

The BOARD OF COMMISSIONERS OF The LITTLE ROCK MUNICIPAL WATER WORKS: Jack H. Wilson, Director, Little Rock Water Works; Houston Burford, Martin Borchert and Frank Whitbeck, Members of the Board of Commissioners of the Little Rock Water Works, individually and in their official capacities, Appellees.

No. 81–1370.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1981.

Decided March 30, 1982.

John W. Walker, Little Rock, Ark., for appellant.

Byron Freeland, Debra K. Hutchens, Mitchell, Williams, Gill & Selig, Little Rock, Ark., for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and REGAN,* Senior District Judge.

McMILLIAN, Circuit Judge.

John L. Boner appeals from a judgment entered in the District Court[1] for the Eastern District of Arkansas dismissing his claims filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981, against the Board of Commissioners of the Little Rock Municipal Water Works (Water Works). Following a bench trial the district court found that Boner failed to establish a prima facie case of disparate treatment. Alternatively, assuming such a case was made by Boner, the district court found that the case was rebutted by a showing of non-pretextual justification.

For reversal Boner, a black male, argues that the district court erred in not finding that he was the victim of disparate treatment because the Water Works discharged him for unsatisfactory work performance while only demoting a white supervisor who was suspected of embezzlement. For the reasons discussed below, we affirm the judgment of the district court.

Boner was hired by the Water Works in 1971 as a laborer in its Distribution Department. He performed satisfactory work and received routine pay raises and promotions. In December 1973, Boner was promoted to the position of Customer Service Representative (Zone Man). A zone man's duties consisted of turning water meters on and

---

* The Honorable John K. Regan, United States Senior District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

off, repairing damaged water meters, reading water meters for billing purposes, and collecting accounts from customers. The accuracy with which the meters are read affects the bill a customer receives.

The zone men were directly supervised by Ron Barrett, who was, in turn, supervised by Don Morrow, the Department Manager. All employees were under the ultimate supervision of Jack Wilson, Director of the Water Works. Wilson made the final decisions with regard to discharges.

Boner was not successful as a zone man. At trial the Water Works introduced Boner's personnel file and his supervisors' records and testimony indicating that Boner made more mistakes and was the subject of more customer complaints than the other zone men. The district court found that, based on the evidence, the following deficiencies existed in Boner's work:

> Boner was doing work improperly or incompletely, failing to do work ordered, making inaccurate readings, working collection orders incorrectly, making serious cutoff errors, failing to recheck errors reported to him, failing to properly handle broken meters and registers, failure to follow specific directions, and falsifying reports, among other things . . . .

Boner v. Board of Commissioners, No. LR–76–C–7 (E.D.Ark. Mar. 4, 1981) (slip op. at 2–3).

In July 1975, Boner was placed on probation verbally by Barrett for poor work performance. On October 27, 1975, Boner was placed on probation by written memorandum for falsifying reports. The terms of the second probation specified that any further mistakes or falsifications would be grounds for dismissal. Defendant's Exhibit 1C.[2]

On November 24, 1975, Boner was ordered to turn off the water at 21 "B" Rosemunn Street. Instead, he turned off the water at 23 "B" Rosemunn, causing customers to complain. When sent to rectify the error the following day, Boner repeated his mistake once again turning off the water at 23 "B" Rosemunn.

Boner received a five-day suspension for the mistake. During that time Barrett and Morrow reviewed Boner's work record and decided to recommend that he be discharged. Wilson accepted their recommendation and discharged Boner on December 5, 1975. In 1978, the Water Works hired a white male to replace Boner.[3]

At trial Boner introduced the following evidence relating to the manner in which Wilson had disciplined Ed Odle, a white male, to support his claim of disparate treatment. In 1974 Odle, a twenty-year employee, was suspected of embezzling $3,000 from the Water Works. Odle was not formally charged and it was not proven that he had taken the money. However, Odle agreed to, and did, repay the money. Wilson believed that Odle had taken the money and demoted him.[4]

The district court found that Boner had not established a prima facie case of disparate treatment because Boner and Odle were not similarly situated employees. The court reasoned:

> It is important to note that the decision not to terminate Mr. Odle was made solely by Mr. Wilson, not by Mr. Morrow or Mr. Barrett. Mr. Wilson decided to continue Mr. Odle's employment because of

**2.** The memorandum reads as follows:

> I made a routine check of your work on October 22, 1975 and found your work had not been done as stated on your work orders, therefore falsifying your daily report and leaving the work for someone else to do. This, in itself, is certainly cause for dismissal. I have repeatedly talked to you about errors you have made in the past and have certainly been more than lenient with you.
> Effective immediately, any failure to perform any and all duties pertaining to your job, in

> the manner in which you have been instructed, will be cause for dismissal.
> Defendant's Exhibit 1C.

**3.** During the last year of Boner's employment there were eight zone men. After Boner's discharge the Water Works did not seek to hire an eighth zone man until 1978.

**4.** Odle was demoted from Department Supervisor to caretaker of Lake Winona, an auxiliary water supply source. His salary was reduced by half.

Mr. Odle's long tenure with and substantial contribution to the Water Works, his potential to make a significant contribution in the future, Mr. Wilson's faith that Mr. Odle would not make such a mistake again, and the fact that Mr. Odle had always done good work for the Water Works. Friendship, too, may have been a factor. Whether Mr. Wilson's decision was wise and appropriate or not, it was based on these reasons and was not based on race in any way.

Mr. Odle had been a very long-time, very effective employee. No one had anything bad to say about his performance of, or his ability to perform, his duties. He had worked with the Water Works for approximately 20 years. He denied any embezzlement. Mr. Wilson assessed these facts, and decided that it would be in the best interest of the Water Works to continue Mr. Odle's employment.

*Boner v. Board of Commissioners, supra,* slip op. at 12.[5] Alternatively, the district court found that assuming Boner had established a prima facie case of disparate treatment, the case was rebutted by a showing of non-pretextual justification. *Id.* at 19–20.

■ On appeal Boner argues that he was the victim of disparate treatment because he was treated differently than Odle.[6] We disagree and affirm the district court on the

basis that Boner did not establish a prima facie case of discrimination.

■ The proof required to establish a prima facie case of discrimination will necessarily vary in different factual situations. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n.13, 93 S.Ct. 1817, 1824 n.13, 36 L.Ed.2d 668 (1973). In the usual case, a prima facie case of discriminatory discharge is established by the plaintiff showing that the plaintiff (1) was a member of a protected class, (2) was capable of performing the job, and (3) was discharged from the job. *See Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1253 (8th Cir. 1981), *citing Osborne v. Cleland,* 620 F.2d 195, 198 (8th Cir. 1980). A prima facie case is established when the plaintiff shows "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

■ In the present case the district court found that Boner was not qualified to perform the duties of a zone man. A careful review of the transcript and the entire record does not convince us that the district court's finding is clearly erroneous. Therefore, in order to prevail, Boner must establish that his discharge and the retention of Odle were done under similar circumstanc-

---

**5.** There was also evidence in the record relating to the discipline of James E. Johnson, a black male. Johnson was employed as a zone man until October 1979, at which time he was demoted and transferred to a groundskeeper job for his failure to turn over money collected from customers. The district court noted:

> Like Odle, he was not fired although accused of dishonesty. Like Odle, there is nothing to indicate that in 1979 (before his demotion) he was not capably performing his duties. Unlike Boner, there was a vacancy for which he was qualified at the time. He accepted the groundskeeper position and still continues as an employee of the Water Works.

*Boner v. Board of Commissioners,* slip op. at 13.

**6.** Boner also argues that there are disparate impact implications to the case reasoning that Odle received privileged treatment over Boner

because Odle was part of the white management structure for which Boner was not eligible because of his race. This issue was not developed at trial. The district court stated:

> Mr. Walker, the plaintiff's attorney, made a passing reference to an impact theory in this case on the last day of trial. Such a theory has not been briefed or argued in this case and does not appear to the court to have any applicability to the case. *Boner v. Board of Commissioners,* slip op. at 17 n.1.

The issue is also not developed on appeal. We conclude that Boner's bare assertion that blacks are excluded from management jobs is too attenuated to support an inference of discrimination. *See Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1254–55 (8th Cir. 1981), *citing Person v. J. S. Alberici Construction Co.,* 640 F.2d 916, 919 (8th Cir. 1981).

es. *See McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 280–85, 96 S.Ct. 2574, 2578–81, 49 L.Ed.2d 493 (1976).

 "What *is* relevant [in determining whether employees are similarly situated] is that two employees are involved in or accused of the same offense and are disciplined in different ways." *Rohde v. K.O. Steel Castings, Inc.,* 649 F.2d 317, 322 (5th Cir. 1981). We conclude that the offense of suspected embezzlement is not comparable to the offense of poor job performance in the present case.

Odle had been an employee of the Water Works for twenty years before he was suspected of embezzling money. His work performance had been rated "outstanding" by his supervisors. He denied any wrongdoing and was not formally charged with embezzlement. Wilson, however, believed that Odle had taken the money and imposed disciplinary sanctions. Odle was demoted and transferred to a position at half his previous salary. The demotion from managerial rank constituted a severe penalty. *See Wooten v. New York Telephone Co.,* 485 F.Supp. 748, 761 (S.D.N.Y.1980). Wilson based his decision to demote rather than discharge on his belief that Odle would not attempt to embezzle again and that his work performance would continue to be outstanding. "Certainly an employer has some discretion to consider all the facts and determine whether the discharge is an appropriate remedy or whether a milder punishment would be more appropriate." *Kendrick v. Commission of Zoological Subdistrict,* 565 F.2d 524, 527 (8th Cir. 1977), *citing Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976).

In contrast, Boner was discharged for poor job performance. Boner received oral and written warnings and yet continued to make mistakes resulting in customer complaints. The district court found, "[t]his [Boner's discharge] recommendation was made in a good faith belief that Boner's work record and performance were unacceptable and simply would not improve, that is, that Mr. Boner could not, or would not perform his job adequately." *Boner v. Board of Commissioners,* slip op. at 4–5.

Employees are not similarly situated for purposes of disparate treatment analysis when, as under the circumstances of this case, the facts establish that one is qualified to perform job tasks competently and the other is not. The district court's determination that Boner's discharge was not based in whole or part on race is supported by substantial evidence and is not clearly erroneous. We affirm.